So Ordered.
Dated: November 23, 2022



Beth E. Hanan
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Jason Gogna,                                                   Case No. 22-23459-beh

                     Debtor.                               Chapter 13

**ORDER ON BOARDWALK PROPERTIES, LLC'S MOTIONS FOR EXAMINATION OF THE DEBTOR AND MAREN GOGNA**

      Before the Court are creditor Boardwalk Properties, LLC's ("Boardwalk") motions to examine the debtor, Jason Gogna, and his non-filing spouse, Maren Gogna ("Mrs. Gogna"), under Fed. R. Bankr. P. 2004. ECF Nos. 21 and 24. Boardwalk seeks information regarding the debtor's income so as to make an informed decision on whether it will object to plan confirmation based on feasibility. Boardwalk states it is unable to verify, based on the limited record of the debtor's self-employment income, whether debtor can make consistent monthly payments required to complete a plan of reorganization under Chapter 13 of the Bankruptcy Code. ECF No. 38, at 3. Boardwalk also states it is concerned that recent state court judgments against debtor will limit his ability to earn income sufficient to fund his plan and notes a conviction for a Class A misdemeanor (i.e., value does not exceed $500) based on fraud on a financial institution. ECF No. 21, at 1-2. As for Mrs. Gogna, Boardwalk contends her

financial condition "is essential to the financial condition of the debtor." ECF No. 24, at 2. The first motion requests copies of debtor's personal and/or business state and federal tax returns for tax years 2020 and 2021, debtor's personal and/or business financial statements from January 1, 2021 to present, and all records relating to debtor's income as of January 1, 2021. Boardwalk also requests all of debtor's debit and card statements for 2022, and his personal and/or business bank statements for 2022, and the oral deposition of debtor. ECF No. 21. The second motion seeks to take the oral deposition of debtor's spouse, and also asks that she be required to produce her 2020 and 2021 state and federal income tax returns, her debit and credit card statements for 2022 and her bank statements for calendar year 2022. ECF No. 24, at 2.

## BACKGROUND

Debtor filed his bankruptcy petition on August 8, 2022. ECF No. 1. On August 22, 2022 he filed his bankruptcy schedules and Chapter 13 plan, ECF Nos. 11-12, and several days later filed a supplemental Schedule I Attachment: Business income. ECF No. 16. Debtor stated on his schedules that he is self-employed and that his business, Iconic Image, LLC, an auto detailing shop, has operated since 2019. ECF No. 11 at 28. Schedule I and his Form 122C-2 list his monthly net income from operating a business, before expenses, as $7,244.90, and his non-filing spouse's monthly take home pay from her work as a nurse as $6,088.17. While debtor's Schedule I lists his gross income from operating a business for the years 2020 and 2021 as "unknown", the supplement he filed states that for the twelve months before filing his bankruptcy case (August 2021 through July 2022), his gross income from his business was $63,345.72, his estimated average future gross monthly income is $8,050, and after estimated future monthly expenses, his average net monthly income would be $7,245.00. ECF No. 16 at 1. His Schedule J reports his monthly net income after monthly expenses as $2,568.07. His schedule A/B lists an interest in a residence on Black Earth Dr. in De Pere WI, which debtor valued at $720,000. His Schedule D notes that Boardwalk Properties

LLC has a matured, secured interest in the Black Earth Dr. residence by virtue of a land contract, and debtor valued Boardwalk's claim as worth $625,406.83.

Debtor's Chapter 13 plan proposes a 60-month plan period, during which he will pay $800/month into the plan. ECF No. 12. His plan proposes to pay secured creditor Boardwalk directly, and also to pay 100% of the general unsecured claims, estimated to total $5,000.00. *Id.* His plan proposes to pay Brown County Circuit Court its secured claim based on past due real estate taxes in the amount of $25,379.36 by making pro rata payments at an interest rate of 12%. *Id.* at 4. In sec. 8.1 of his plan, debtor proposes to remain in the homestead property on Black Earth Dr., and beginning in September 2022 to make monthly adequate protection payments of $3,473.00, constituting principal and interest at 5.3%, to Boardwalk, as well as to maintain property insurance (of $180/mo.; *see* ECF No. 11 at 20). The special provision also states "within one year of confirmation of a Ch. 13 Plan, the debtor or his non-filing spouse, will obtain financing sufficient to pay the matured land contract balance owed to Board … in exchange for a deed in fulfillment of the land contract or similar deed conveying the homestead."

Boardwalk's motion for Rule 2004 examination asserts that it filed a foreclosure action against the debtor and his spouse in 2021, based on the land contract the Gognas executed with Boardwalk in 2019 in the original amount of $535,000, secured by the Black Earth Dr. residence. ECF No. 21.9

## DISCUSSION

Rule 2004 allows examinations of debtors and any of their affiliate persons and entities on matters that relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's bankruptcy estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). The Rule continues, "In … an individual's debt adjustment case under chapter 13 … the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or

to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, or any other matter relevant to the case or to the formulation of a plan."

Boardwalk maintains the Rule is far-reaching, so long as the examination does not involve issues that are related directly to a pending adversary proceeding, citing *In re Buick.* 174 B.R. 299, 305 (Bankr. D. Colo. 1994). The debtor argues (1) Boardwalk has not demonstrated why an examination is necessary so early in the case, (2) that forcing him and his spouse to undergo such an examination would result only in additional expenses, and (3) that Boardwalk is assuming duties that are normally reserved for the trustee. ECF No. 30, at 2. Boardwalk does not seek information regarding the asserted value of the real estate securing its interest via this Rule 2004 request.

Whether the request is to examine a debtor or a third party via Rule 2004, the text of the Rule does not require that a movant establish good cause, or cause, to obtain the information it seeks. With regard to examination of the debtor, courts are in agreement that a Rule 2004 request can be broad, so long as the information sought relates to the administration of the bankruptcy estate:

> An investigation under Fed. R. Bankr. P. 2004 may seem analogous to the discovery provisions of the Federal Rules of Civil Procedure, but the provisions are actually quite different. No "good cause" language is included in the Rule. Generally, a Rule 2004 examination is a broad "fishing expedition" into a party's affairs for the purpose of obtaining information relevant to the administration of the bankruptcy estate. *In re Szadkowski*, 198 B.R. 140, 141 (Bankr. D. Md. 1996). Rule 2004 is substantially a "pre-litigation device for assessing whether grounds exist to commence an action…" *In re French*, 145 B.R. 991, 992 (Bankr. D. S.D. 1992).

*In re Handy Andy Home Imp. Centers, Inc.*, 199 B.R. 376, 380 (Bankr. N.D. Ill. 1996) (addressing request by creditors committee in involuntary Ch. 11 case for protective order). *See also, In re J& R Trucking, Inc.*, 431 B.R. 818, 821 (Bankr. N.D. Ind. 2010) (describing a Rule 2004 examination of debtor as a

broad-ranging inquiry into debtor's assets, liabilities, financial affairs and anything else that might affect the administration of the bankruptcy estate.) Noting some qualifications to this broad scope, the Collier on Bankruptcy explains, "courts are generally reluctant to allow escape from a Rule 2004 examination unless the party can show that the examination is oppressive and burdensome. *See In re Vantage Petroleum Corp.*, 34 B.R. 650, 652 (Bankr E.D. N.Y. 1983). For example, the movant should not be allowed to proceed if the disruption or cost to the debtor far outweighs any benefits to the creditor. *See In re Express One Int'l, Inc.*, 217 B.R. 216 (Bankr. E.D. Tex. 1998); *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994). Other courts may limit discovery under Rule 2004 where, they feel, discovery interferes with other bankruptcy or nonbankruptcy policies. *See In re Eagle-Picher Indus., Inc.*, 169 B.R. 130 (Bankr. S. D. Ohio 1994) (the court denied discovery of mediation and plan drafts)." 9 Collier on Bankruptcy ¶ 2004.01 (16th ed. 2018).

Debtor Gogna has argued that Boardwalk essentially is acting as the trustee in seeking these examinations, and that such exam requests should be made solely by the Chapter 13 trustee. But other courts have allowed creditors to obtain Rule 2004 exams if the particular request is not of the type reserved to trustees. *See, e.g., In re J & R Trucking, Inc.,* 431 B.R. 818, 822 (Bankr. N.D. Ind. 2010); *citing Matter of Perkins,* 902 F.2d 1254, 1258 (7th Cir. 1990) (noting, in chapter 7 cases, that it was the trustee's duty to investigate the debtor's affairs and rights of the estate, and to the extent movants sought to discover avoidable transfers, there was nothing the movants could do with such information once obtained – that was the exclusive purview of the trustee). In contrast, § 1325 affords trustees *and* creditors the opportunity to object to a Chapter 13 plan. As such, the mere infrequency of creditor requests for a Rule 2004 exam to enable the creditor to assess plan feasibility is not a basis to deny the request. Moreover, while there will be some additional costs

involved in meeting the request of debtor, there is no showing here that those costs would be of an oppressive magnitude.

Consequently, the Court will grant Boardwalk's request to conduct an examination of Mr. Gogna at a mutually convenient date and time within the next 30 days, and to obtain the financial records requested. Requiring debtor to produce his personal and business state and federal tax returns for tax years 2020 and 2021, his personal and business financial statements from January 1, 2021 to present, and all business records relating to debtor's income as of January 1, 2021 will allow Boardwalk to assess whether debtor's sources of income are likely to make his plan feasible. The Court has some reluctance to order production of debtor's bank, credit and debit card statements which show historical payments for expenses, when the purpose of Boardwalk's request is to assess plan feasibility and availability of income to fund the prospective plan term. Debtor already has described his ongoing expenses in his schedule J and supplemental statement of business expenses and has appeared at the initial § 341 meeting. ECF No. 35. Notwithstanding this reluctance, there is no doubt Rule 2004 has been read to apply broadly to debtors: "The scope of such an examination … [relates] to just about anything that deals with the debtor's action, assets, liabilities or financial affairs, its right to a discharge, or any matter affecting the administration of the bankruptcy estate." *In re Sheetz*, 452 B.R. 746, 748 (Bankr. N.D. Ind. 2011) (citations omitted.) Therefore, the Court will require debtor Gogna to produce the requested personal and business bank statements, and his credit and debit card statements as well.

Next, Boardwalk asserts it has good cause to examine Mrs. Gogna and obtain her financial records. Boardwalk considers that an examination of the non-filing spouse will aid in its assessment of plan feasibility and basis to object, since the debtor relies on Mrs. Gogna's income to help fund his plan. Boardwalk asks to question her, and to obtain her two most recent tax returns and her 2022 bank, credit card, and debit card statements. ECF No. 24, at 2.

The debtor objects, arguing that Boardwalk has not shown good cause to examine Mrs. Gogna, a third party, citing *In re Wilcher.* 56 B.R. 428 (Bankr. N.D. Ill. 1985). *Wilcher* explains, in the context of a Rule 2004 request of a third party, that when there has been a motion to quash, or objection to Rule 2004 request for production, "the examiner bears the burden of proving that good cause exists for taking the requested discovery." 56 B.R. at 434 (citations omitted). That court continued:

> Good cause may ordinarily be shown by a claim that the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice, however the burden of showing good cause is an affirmative one and is not satisfied merely by a showing that justice would not be impeded by production of the requested documents.

56 B.R. at 434-35.

The Court accepts that inquiring as to "sources of any money . . . acquired by the debtor for purposes of consummating a plan . . ." is within the scope of the Rule. Fed. R. Bankr. P. 2004(b). And, given the debtor's reliance on his wife's income to help fund his Chapter 13 plan, the Court finds Boardwalk has established good cause to examine income records of Mrs. Gogna. Those income records are her state and federal tax returns for tax years 2020 and 2021.

But the other records Boardwalk seeks—Mrs. Gogna's 2022 bank, credit card and debit card statements—need not be produced. The same reluctance identified above to require production of historical expense records from the debtor is only magnified when Boardwalk seeks such records from a non-debtor. Moreover, while *Wilcher* explained that good cause may be shown if the requested documents are necessary to establish movant's claim, here there is no "claim", at least in the form of an objection to plan confirmation, presently lodged by Boardwalk. Consequently, records of the non-debtor's expenses are even more tenuously related to any potential plan objection Boardwalk may raise. This portion of Boardwalk's request is denied. Nonetheless, recognizing

that Mrs. Gogna's 2022 bank statements may contain some information disclosing her 2022 income, the Court will require production of her 2022 pay stubs in lieu of those over-inclusive bank statements.

The Court also denies Boardwalk's request to examine Mrs. Gogna via deposition. Not only would such an examination be burdensome to the non-debtor and generate increased attorney fees, but production of the multi-year income-related documents allowed above should be sufficient to permit an assessment of feasibility of debtor's plan and thereby avoid any undue hardship to the creditor.

For the foregoing reasons, Boardwalk's motions are **GRANTED** in part and **DENIED** in part, and are limited to copies of the following documents, which must be submitted to Boardwalk by **December 22, 2022:**

- Jason Gogna's personal and business state and federal tax returns for tax years 2020 and 2021.
- Jason Gogna's personal and business financial statements from January 1, 2021 to present.
- Jason Gogna's 2022 personal and business bank statements, and his credit and debit card statements.
- Maren Gogna's state and federal tax returns for tax years 2021 and 2022.
- Maren Gogna's 2022 pay stubs.

In addition, Jason Gogna must submit to an oral examination at a mutually convenient time within the 30 days of the date of this order.

#####